TEXTO COMPLETO DE LA SENTENCIA
Antecedentes
La causa del epígrafe comenzó el 16 de agosto de 2002, cuando el Sr. Miguel A. Rodríguez Hernández *1160 representado por su hijo y apoderado, Sr. Harry Rodríguez Rivero (Sr. Rodríguez Rivero), accionó judicialmente ante el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), contra la Sra. Susana Ortiz Miranda (Sra. Ortiz) en demanda sobre cobro de dinero (K1CD2002-2530).
En lo aquí pertinente, alegó lo siguiente:
“2. El 20 de enero de 1990, la parte demandada, señora Susana Ortiz Miranda, suscribió un Pagaré al Portador cuyo término de vencimiento fue el 20 de diciembre de 1990. (...) Dicho pagaré es por la cantidad de VEINTE MIL DOLARES ($20,000.00). Acompaña este escrito copia de dicho Pagaré.

3. La parte demandada ha incumplido con su obligación de pago, por lo que la parte demandante le notificó su decisión de cobro de dinero, mediante comunicación escrita fechada el 16 de agosto de 2001 y remitida por correo certificado con acuse de recibo número 7099 3400 0005 2412 7467. La misma fue recibida el 1 de septiembre de 2001. Acompaña este escrito copia de la misiva y acuse de recibo.

(-•)”•
(Ap., pág. 4.)
Asimismo, argüyó que todas las gestiones de cobro resultaron infructuosas por lo que reclamó en cobro los $20,000.00, como deuda vencida, líquida y exigible, costas, gastos y honorarios de abogado. (Ap., pág. 5.)
Luego de accidentado trámite, [1] finalmente, la Sra. Ortiz quedó emplazada el 30 de julio de 2004. (Ap., pág. 7.) El 4 de agosto de 2004, la Sra. Ortiz solicitó prórroga de 30 días para presentar alegación responsiva, a lo que Instancia accedió mediante Orden notificada el 13 de septiembre de 2004. (Ap., Oposición, pág. 6.)
Ante la falta de contestación en la causa, el 23 de septiembre de 2004, el Sr. Rodríguez Rivero presentó “Moción Solicitando Anotación de Rebeldía”. (Ap., Oposición, pág. 7.) Atendido ello, Instancia anotó la rebeldía de la demandada mediante Orden notificada el 9 de noviembre de 2004. (Ap., Oposición, pág. 12.) En el ínterin, específicamente el 4 de octubre de 2004 y dentro de la prórroga concedida, la demandada compareció y solicitó la desestimación de la causa, con perjuicio, por violación a la Regla 4.3 de Procedimiento Civil, 32 LPRA Ap. III. [2]
Luego de extenso trámite en el que, entre otros asuntos, se dejó sin efecto la anotación de rebeldía contra la demandada, el 5 de octubre de 2005, el TPI notificó una Resolución en la que declaró sin lugar la solicitud de desestimación presentada por ésta. [3] (Ap., Oposición, págs. 22-23.)
Así las cosas, ante solicitud de la abogada del demandante para celebrar una reunión con miras a elaborar el informe a presentarse en la Conferencia con Antelación al Juicio pautada para el 28 de septiembre de 2006, el abogado de la demandada, Ledo. Pedro J. Semidey Morales (Ledo. Semidey), solicitó al TPI, por vía de moción del 22 de septiembre de 2006, la conversión de tal vista a una de estado de los procedimientos en vista de que aún no había contestado la demanda. (Ap., Oposición, págs. 24-25.)
La solicitud del Ledo. Semidey fue acogida y el 28 de septiembre de 2006 en la vista sobre el estado de los procedimientos, el TPI concedió a la demandada 10 días plazo para formular alegaciones respondientes. (Ap., Oposición, pág. 26.) Ante el incumplimiento de la demandada, en la Conferencia con Antelación al Juicio celebrada el 25 de enero de 2007, Instancia nuevamente le ordenó contestar la demandada en el término de 10 días. (Ap., Oposición, pág. 28.)
A pesar de los múltiples requerimientos hechos a la demandada para que presentara su contestación, ello no *1161 ocurrió. Así lo admite el abogado de ésta en la apelación del epígrafe al señalar que “[c]omo un dato curioso, el trámite procesal continuó y nunca la parte demandada contestó la demanda. Ello, por inadvertencia o error excusable...”. (Escrito de Apelación, pág. 2.)
Luego de varios incidentes procesales no necesario aquí recapitular, el 4 de marzo de 2009, el asunto fue a vista en su fondo. La parte demandante tuvo la oportunidad de presentar prueba testifical y documental. La parte demandada contrainterrogó y optó por presentar únicamente prueba documental.
Declarada finalmente sin lugar en corte abierta una Moción de “Non-Suit” presentada por la demandada, el 5, archivada en autos copia de su notificación el 11 de marzo de 2009, el TPI dictó Sentencia en la que declaró con lugar la demanda. Aquilatada la evidencia y dando entero crédito al testimonio del Sr. Rodríguez Rivero, el TPI encontró probado que el 20 de enero de 1990, la Sra. Ortiz suscribió el pagaré al portador en controversia por $20,000.00 con vencimiento al 30 de junio de 1990, obligación que fue incumplida por ésta a pesar de los requerimientos de pago.
En desacuerdo, la Sra. Ortiz recurre en la apelación del epígrafe e imputa al TPI incidir de la siguiente manera:

“Erró el Tribunal apelado al dictar una sentencia en cobro de dinero contra la demandada apelante declarando admisible un documento que a todas luces era inadmisible en evidencia, e improcedente en derecho, constituyendo esto, un claro abuso de discreción. ”

La causa de marras data del 7 de abril de 2009 y luego de varios incidentes procesales, no necesario aquí recapitular, el 18 de agosto de 2009, la apelante radicó en autos la transcripción (T.) de la prueba oral practicada ante el TPI. El 2 de octubre de 2009, el apelado presentó su alegato en oposición. La causa está sometida y procede resolver.
Exposición y Análisis
En el señalamiento de error, la Sra. Ortiz aduce que el TPI incidió al admitir en evidencia un pagaré al portador que establece una obligación económica incurrida por ésta, sin que dicho documento fuera autenticado conforme lo requieren las Reglas de Evidencia.
Como se sabe, la presentación de prueba perceptible a los sentidos, como lo es la documental, requiere de varios pasos para que pueda ser admitida en evidencia, a saber: (1) que ésta sea pertinente; (2) que la misma sea debidamente autenticada o identificada; y (3) que el juzgador, conforme a su sana discreción, la acepte según los criterios establecidos en la Regla 19 de Evidencia, 32 LPRA Ap. IV, R. 19. Cfi, Regla 80 de Evidencia, 32 LPRA Ap. IV, R. 80.
Por lo mismo, el requisito de autenticación constituye el cimiento para la admisibilidad de toda pieza de evidencia que se propone someter. Ello se logra mediante la presentación de evidencia suficiente para establecer una determinación de que la materia en cuestión es lo mismo que el proponente sostiene que es. Regla 75 de Evidencia, 32 LPRA Ap. IV, R.75; Pueblo v. Echevarría Rodríguez I, 128 DPR 299, 349 (1991); Pueblo v. Carrasquillo Morales, 123 DPR 690, 697-700(1989); E. Chiesa Aponte, Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Fedérales), República Dominicana, Publicaciones JTS, 1998, T. II, págs. 991-992.
Nuestro derecho probatorio precisa, a modo de ejemplo, varias instancias de autenticación. Una de las más utilizadas, en particular en cuanto a escritos o documentos, se relaciona a la autenticidad mediante evidencia de la letra. A estos fines, en el acápite (A) de la Regla 76 se dispone:
*1162 "(A) Autenticidad mediante evidencia de la letra: Un escrito podrá autenticarse mediante evidencia de que la letra del autor es genuina. A esos fines, un testigo no perito podrá expresar su opinión sobre si un escrito es de puño y letra del presunto autor a base de su familiaridad con la letra del presunto autor, si dicha familiaridad no se adquirió con miras al pleito. La autenticidad podrá demostrarse también mediante la comparación o cotejo que haga el juzgador o un testigo perito del escrito en controversia con otro escrito debidamente autenticado. ” 32 LPRA Ap. IV, R. 76 (A).
Cabe aquí señalar que ninguna parte en un litigio está obligada a utilizar un medio específico de prueba para sostener sus alegaciones. Así, la Regla 10(H) de Evidencia establece que la evidencia directa o circunstancial, de ser creída por el juzgador, es prueba suficiente para establecer cualquier hecho. 32 LPRA Ap. IV, R. 10(H). El profesor Chiesa señala que:
“[E]Vo vale también para autenticar evidencia (...). Esto puede hacerse mediante el testimonio de un testigo a modo de evidencia directa, o mediante evidencia circunstancial, esto es, que las circunstancias apuntan a que la evidencia es lo que el proponente sostiene que es. Valga citar aquí de McCormick on Evidence, en el contexto de autenticación de escritos mediante evidencia circunstancial:

As has been seen there are various ways in which writings may be authenticated by direct evidence. Nevertheless, it will frequently occur that no direct evidence of authenticity of any type exists or can be found. Resort must then be had to circumstantial proof and it is clear that authentication by circumstantial evidence is uniformly recognized as permissible. Certain configurations of circumstantial evidence have in fact been so frequently held to authenticate particular types of writings that they have come to be recognized as distinct rules, e.g., the ancient documents rule, the reply doctrine, etc. These more or less formalized rules are treated in succeeding sections.

It is important to bear in mind, however, that authentication by circumstantial evidence is not limited to situations which fall within one of these recurrent patterns. Rather, proof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the writing. ”
Chiesa, Op. cit., pág. 999.
Según lo expuesto, un testigo no perito puede establecer la autenticidad de un escrito en función de su familiaridad con la letra del presunto autor o por vía de prueba circunstancial.
En el caso se marras, el único testigo en declarar lo fue el Sr. Rodríguez Rivero que, como quedó antes dicho, es el hijo y apoderado del Sr. Miguel Rodríguez Hernández y en cuyo nombre se instó la demanda de cobro. El Sr. Rodríguez Rivero declaró que conoció a la demandada porque ella y su padre sostenían una relación que describió como “íntima. De compañeros. (...) Obviamente, no estaban casados, pero, este..., convivían.” (T., pág. 9.) El Sr. Rodríguez Rivero aclaró que conoció a la Sra. Ortiz a un nivel más personal a partir del 1991 cuando él decidió ir a vivir a la residencia de su padre. Id., pág. 10. Al respecto, atestó que la Sra. Ortiz pernoctaba en casa de su padre y en otras ocasiones él y su padre se quedaban en la residencia de la demandada. Id., págs. 21-22, 25.
Mientras el Sr. Rodríguez Rivero testificaba, la parte demandante ofreció en evidencia el aludido pagaré al portador. Al respecto, transcribimos a continuación lo siguiente:

‘‘Leda. Ocasio García Don Harry, dígame qué documento es ese.

Testigo Este es un pagaré al portador. Con un valor de veinte mil dólares ($20,000), un vencimiento de treinta (30) de junio del noventa (90), otorgado por papi a la Sra. Susana Ortiz Miranda.

*1163
Señora Juez ¿Cuál es el vencimiento?

Testigo El vencimiento, según tengo aquí, treinta (30) de junio del noventa (90). De mil novecientos noventa (1990), perdón. Arriba a mano derecha lo menciona.

Leda. Ocasio García ¿Me puede indicar quién firma el pagaré?

Testigo Susana Ortiz...

Ledo. Semide\y] Tenemos reparo, Su Señoría.

Testigo Susana Ortiz Miranda.

Ledo. Semide\y] Tenemos reparo.

Señora Juez Fundamento, licenciado.

(...)

Ledo. Semide[y] De que él no puede dar fe de algo donde él no estaba.

Leda. Ocasio García No, no. Yo le estoy preguntando ...

Señora Juez Es No Ha Lugar.

Leda. Ocasio García ...qué nombre, qué firma hay ahí en el documento.

Señora Juez No Ha Lugar. Conteste.

(...)

Leda. Ocasio García ¿Me puede indicar qué dice debajo de la firma de Susana Ortiz Miranda?

Testigo Ah, lo que mencioné, mire. Sí, el seguro social de ella y donde mencioné horita que ella vivía. Porque habíamos ido personalmente a su casa que es la calle Tolosa dos ochentiocho (sic) (288) en Collage Park y además del número de teléfono para ese tiempo. ”
(T., págs. 11-13.)
El testigo continuó declarando respecto al pagaré, en particular sobre el número de seguro social que surgía del documento; que el pagaré está escrito a maquinilla; el interés que allí se menciona y la fecha a partir de la cual se cobraría el mismo; y que fue su padre quien le entregó dicho pagaré en unión a otros 20 ó 25 pagarés para que gestionara su cobro por conducto de un poder general que se le otorgó. (T., págs. 13-15.) Señaló además que el documento está firmado con tinta azul. Id., pág. 35.
El examen directo continuó de la siguiente forma:
“Leda. Ocasio García Voy entonces al Exhibit estipulado. (Enfasis suplido.) Don Harry, le pregunto, ¿si previo, verdad, a la demanda del caso, se había hecho algún intento de cobro?

*1164
Testigo Sí. Sí, con, con el Bufete Barresi-Negrón. Sí, es correcto.

Leda. Ocasio García ¿Para qué fecha se hizo ese intento de cobro?

Testigo En el noventa... Perdón. La fecha fue dieciséis (16) de agosto de dos mil uno (2001).

Leda. Ocasio García ¿Eso es..? ¿Qué tipo de documento usted tiene ahí con usted?

Testigo Yo tengo una carta con acuse de recibo, este, enviada por la Leda. Carmen Negrón González a la Sra. Susana Ortiz Miranda como efecto de cobro de dinero.

Leda. Ocasio García ¿ Y qué dirección tiene la carta?

Testigo La misma. La Calle Tolosa, Urbanización Collage Park, dos ochentiocho (sic) (288), San Juan, Puerto Rico.
(...)

Leda. Ocasio García Le pregunto, don Harry, ¿esa carta recibió contestación?

Testigo Que yo sepa, no.

Leda. Ocasio García No.

Testigo Pero, sífue recibida por la señora Susana. De hecho, coincide la firma de la, de la persona que recibe el documento con el que aparece en el (incomprensible).” (Énfasis nuestro.)
(T., págs. 15-16.)
En adición al Exhibit (1) antes referido, presentado con miras a establecer el reconocimiento de la letra de la demandada, la parte demandante también ofreció en evidencia dos tarjetas de felicitación (Identificaciones 3 y 4) que, según atestó el Sr. Rodríguez Rivero, fueron entregadas por la demandada a su padre, una en ocasión del Día de los Padres y otra en el Día de San Valentín del 1992. (T., págs. 17-18.) Indicó que fue su padre quien le entregó dichas tarjetas, junto a otros documentos, para que constatara “la fecha[, l]o que tiene que ver con la firma o la letra.” Ibid. Señaló, además, que ambas tarjetas estaban dirigidas a su señor padre y firmadas por “Susana”. Ibid.
Luego en el contrainterrogatorio, el Sr. Rodríguez Rivero expuso:
"Ledo. Semide[y] La pregunta es, ¿cuándo ella preparó esa tarjeta que usted dice que las envió ella?

Testigo No estaba presente.

Ledo. Semide[y] No estaba presente. ¿ Y tampoco usted estaba presente cuando su señor padre alegadamente recibió esas tarjetas?

Testigo Estaba presente.

Ledo. Semide[y] ¿Cuándo las recibió él?

*1165
Testigo Es correcto.

Ledo. Semide[y] ¿De quién las recibió él?

Testigo De la señora Susana.

Ledo. Semide[y] ¿O sea, que ella se las llevó personalmente?

Testigo Ella se las llevó personalmente.

Ledo. Semide[y] ¿Personalmente?

Testigo Eso es correcto.

Ledo. Semide[y] ¿ Usted vio eso?

Testigo A la casa, a nuestra casa. Eso es así. ”

(T-, pág. 31.)
Cabe señalar que las dos tarjetas aludidas no fueron admitidas en evidencia, puesto que aún teniendo las originales la parte demandante desfiló en Sala las copias de dichas tarjetas. (T., págs. 31-32, 40.)
De lo expuesto surge que el Sr. Rodríguez Rivero testificó que conocía la letra de la demandada no tan sólo por la convivencia surgida a raíz de la relación íntima habida entre la demandada y su padre, señalando en particular haber estado presente en diversas ocasiones cuando la demandada le entregó a su padre tarjetas de felicitación, sino también presentando en evidencia el Exhibit 1 que incluía la carta de cobro certificada enviada a la dirección postal de la demandada y el acuse de recibo firmado, firma que según indica el testigo coincide con la firma de la demandada. Analizada y aquilatada la evidencia, Instancia determinó que el testimonio del Sr. Rodríguez Rivero fue suficiente para autenticar el pagaré al portador aquí en controversia, en tanto y en cuanto se logró demostrar que dicho documento fue suscrito por la Sra. Ortiz.
Luego de un análisis detenido de la prueba antes reseñada, estimamos que el foro sentenciador fundamentó su determinación en toda la evidencia que tuvo ante sí y procedió a dirimir el conflicto en la prueba correctamente en función de credibilidad. Ante la ausencia de clara demostración de prejuicio, parcialidad o error en tal gestión, no podemos intervenir con la apreciación de la prueba ni con la adjudicación de credibilidad que efectuó el ilustrado foro de instancia. Ramos Milano v. Wal-Mart, 168 DPR 112 (2006); Colón v. Lotería, 167 DPR 625 (2006); Colón v. Glamorous Nails, 167 DPR 33 (2006). Más aún, coincidimos con el criterio del TPI. El TPI actuó correctamente al admitir el pagaré al portador en evidencia por lo que no se cometió el error señalado.
Por último es aquí de señalar que conforme surge de la concatenación de hechos reseñada y según admite la propia demandada y aquí apelante, Sra. Ortiz, en el escrito de apelación de epígrafe, la demanda nunca se contestó, a pesar de los múltiples requerimientos del TPI a tales efectos. Como se sabe, las alegaciones contenidas en una demanda requieren de una alegación respondiente. De tal forma y en atención a lo dispuesto en la Regla 6.4 de Procedimiento Civil, cuando frente a una alegación que requiera una alegación respondiente, y que no se refiera al monto de los daños, no se contesta, lo bien alegado se tiene por admitido. 32 LPRA Ap. Ill, R. 6.4; Alamo Pérez v. Supermercados Grande, Lnc., 158 DPR 93, 100 (2002); Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 815 (1977).
*1166 Atendido lo anterior, entendemos que incluso por las alegaciones procede la sentencia apelada. Reiteramos que la Sra. Ortiz nunca contestó las alegaciones en las que se le imputa haber incurrido en la obligación económica aquí en controversia, en particular que ella suscribió el mencionado pagaré al portador. También guardó silencio en cuanto a las alegaciones sobre su incumplimiento en el pago de la obligación, la cantidad adeudada e intereses. Procede confirmar.
Dictamen
Conforme lo expuesto, confirmamos la Sentencia aquí apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 61

. Habida cuenta la falta de trámite en el caso por más de seis meses, el 17 de marzo de 2003, Instancia dictó orden de mostrar causa por la cual no se debía proceder con el archivo. Dicha resolución fue notificada únicamente a la abogada de la parte demandante, quien no compareció. Ante ello, el 5 de mayo de 2003, el TPI dictó Sentencia ordenando la desestimación y archivo de la causa, por virtud de la Regla 39.2 (b) de Procedimiento Civil. Dicha Sentencia tampoco fue notificada, a la parte demandante, sólo a su abogada de récord. Atendido el trámite procesal acaecido, Instancia acogió una moción de la parte demandante, dejó sin efecto la sentencia de archivo y autorizó la expedición de nuevo emplazamiento.

. Alegó que transcurrió en exceso del término reglamentario sin que se diligenciara el emplazamiento original expedido el día en que se presentó la demanda, 16 de agosto de 2002, sin que el demandante acreditase causa justificada para tal dilación.

. Otro panel de esta Curia no expidió el auto de Certiorari solicitado. Véase, Resolución del 23 de diciembre de 2005 (KLCE-2005-01515).